LEIGH M. CLARK, Retired Circuit Judge.
Under an indictment charging him with murder in the first degree of Charles Michael Henderson by shooting him with a pistol, a jury found appellant guilty of manslaughter in the second degree and fixed his punishment at imprisonment for twelve months in the county jail. He was sentenced accordingly. He had pleaded not guilty and not guilty by reason of insanity. Both issues were submitted to the jury.
As able counsel for appellant makes no contention that the verdict is not supported by the evidence and as it appears there is no reasonable basis for such contention, we deem it sufficient to note that probably the verdict of the jury was kindly tempered by the sincere remorse of defendant when he soberly reflected that in a drunken condition he had shot and killed “his best friend.”; that, although there was some evidence to indicate insanity and some evidence to indicate that another intoxicated person was the one who shot the victim, there is no doubt that the jury concluded otherwise.
Appellant’s first insistence is that the trial court committed reversible error “in telling the jury that both sides had agreed for the jury to be separated when, in fact, the State had opposed separation.” According to the transcript, the factual statement is correct, in part. After the case had been called for trial but before the jury was selected to try the case, the court inquired of the attorneys out of the hearing of the panel of jurors from which the jury to try the case was to be selected, by asking, “If this case goes into the night and into tomorrow, do you agree on the jury separating for the night?” Thereupon, the following occurred:
*501 “TOM RADNEY — Yes, sir.
“SONNY HORNSBY — No, sir, the State objects to that.
“COURT — Well, the reason I am asking you now is, I want to question these jurors about any particular personal problems they might have in the event of a sequestration. Will you enter into a written consent at this time?
“TOM RADNEY — To what?
“COURT — To a separation.
“TOM RADNEY — Yes, sir.
“COURT — Any other questions of the jury? The Jury is qualified.
“(Whereas, a struck jury of twelve was selected, seated in the box and sworn in according to law.) (Jury recessed to the jury room.) The defendant was present throughout the entire proceedings, attended by his counsel.)”
The case then proceeded with opening statements of counsel to the jury, through the testimony of four witnesses for the State, until some time in the afternoon, while a fifth witness was being interrogated by the State, the following occurred:
“TOM RADNEY — Your Honor, at this time, I don’t know if the Court is going to break, but we do need an ‘out of court’ hearing, out of the presence of the jury. I don’t know what you are going to do about supper and night. Is that correct Mr. Hill?
“WILLIAM HILL — Yes, we probably need to hear this next evidence, or at least let the State make an offer.
“COURT — How do you feel like we are moving?
“E. C. HORNSBY — Moving good. Making progress.
“COURT — You members of the jury, it’s getting late in the afternoon for one thing, and secondly, before we proceed on with the testimony of this witness, we have to go into certain matters outside of your presence. Before we determine the extent to which we proceed on with this witnesses testimony. So, what we will do is, from the standpoint of you jurors, we are going to go ahead and break for the night. Of course, we will be in here a little bit later going over these matters outside of your presence, so that we will be ready to go in the morning, and get right back into the trial of this case. “Both sides in this case, have indicated their willingness to allow you jurors to go home tonight, and not be put up in a motel. That’s because everybody has confidence in you, and in your integrity and your willingness to abide by the oath that you took as jurors. And just briefly, I am going to go over your obligations again, as jurors to be sure there is no misunderstanding about it. You are not to let anybody communicate with you about this case. [There follows more than a transcript page of apt instructions and warnings as to the duties of the jurors under the circumstances.] Anybody have any questions about that? Everybody stay seated, and you jurors go home, when you come back in the morning at 9 o’clock, go straight back into the jury room. You all are excused until 9:00 o’clock in the morning.”
The jury then left the court room and counsel for the defendant proceeded to question the witness in connection with the defendant’s contention that a statement of the defendant should be suppressed as evidence, when the following occurred:
“COURT — It’s suppressed.
“TOM RADNEY — To save time, that’s the answer Officer Brazzel would give without going through the same thing tomorrow, I ask that you consider that as well.
“COURT — He will have to be suppressed. “[Whereas, court was recessed for the day]
“Court was called to order Friday morning, and the defendant present in open court attended by his counsel, the jury was present in the jury box.”
Some time that morning, after at least one other witness had testified, counsel for the defendant, during a recess for the jury, invoked for the first time a ruling of the court relative to what the court had stated to the jury as to the agreement of the *502 parties for their separation. The transcript shows:
“TOM RADNEY — The record will reflect, and I think I’ve been here every-time the records been going, that Your Honor asked me if I would agree for the jury to be separated, and said I would, and signed a paper to that effect, and so did defendant. At that time, the State objected to that. Now, pursuant to Title 12-16-1, the Code of Alabama, 1975, as Amended, the Statute says, that the jury in a case of this type, can be — as in all felony cases — can be unsequestered, with the permission of both the defendant lawyer and the State of Alabama. Now, Your Honor told this jury yesterday, that both sides agreed for the jury to be separated. If that happened, and it happened when I was not here, and I would make strong objections to that, since the statute was not complied with. Therefore, we make a motion for a mistrial.
“WILLIAM HILL — Judge the only response I have is, I believe I’ve been here every time we’ve been on record, and I certainly don’t recall the court saying it was with anybody’s permission, as I was listening and—
“TOM RADNEY — If you’ll ask the court did he say that, he will say he did.
“COURT — I told them that both sides had agreed that they could separate, because both sides had confidence in their integrity, and all that sort of thing.
“TOM RADNEY — Yes, sir, and I make the point that is just not true, Your Hon- or, I just say Your Honor would stick strictly with the facts.
“WILLIAM HILL — Our basic response Your Honor would be, that is harmless error.
“TOM RADNEY — The Supreme Court will decide if that is harmless error. I just want you to admit that the State never did tell the Court that you agreed for the jury to separate, is that true?
“WILLIAM HILL — Yes sir, we would have to go on record and say that is true.
“COURT — Motion for mistrial is denied.”
The reproductions of the record clearly indicate some misunderstanding among the court, defense counsel and counsel for the State, but they do not prove any factual misstatement by anyone concerned. The obvious understanding of the trial court that the parties through their attorneys had agreed for the jury to separate is emphasized by the fact that immediately after counsel for the State expressed an objection to a separation, the court gave a special reason, a good reason, for wanting to know then whether the jury could separate, and there was an express renewal by defendant’s counsel of his consent but no express renewal by counsel for the State of his objection. A reasonable conclusion is that there was some real basis for the court’s understanding at the time that there was consent by counsel for the State, for otherwise the court would have asked the prospective jurors some questions pertaining to their ability to comply satisfactorily with a sequestration order. The record indicates that at that time everything that was said or done on the subject was in the immediate presence and hearing of the trial judge and counsel for the respective parties. It should be clear that counsel for defendant was not led to believe by anything occurring in his presence and hearing, that counsel for the State had given his consent to a separation. Furthermore, the record conclusively shows that counsel for the defendant was fully aware of the action of the court in allowing the jury to separate for the night. All of this being true, there was a waiver by defendant of any complaint by him of the action of the court in allowing the jury to separate.
As to the point made by defendant’s counsel, long after the trial had been resumed the next morning, to the effect that the court had mistakenly told the jury the day before that the parties had agreed for the jury to separate that night, we believe that irrespective of any question of whether there had been any waiver by defendant of that point, defendant had no valid ground for a complaint of any inaccuracy in what the court had said. In the statutory provision for permitting separa *503 tion of a jury during a trial upon consent of defendant and his counsel and the consent of the prosecuting attorney, it is provided:
“(a) ...
“(b) It shall be improper for the trial court to ask the accused, counsel for the accused, or the prosecuting attorney, in the hearing of the jury, whether he or they will consent to a separation of the jury pending the trial.
“(e) It shall be improper for the accused, counsel for the accused, or the prosecuting attorney to state to the trial court in the hearing of the jury that he or they consent to a separation of the jury pending the trial.” Code of Alabama 1975, § 12-16-9
The prejudice to be avoided by rigid adherence to the required statutory procedure is the natural likely prejudice toward one or both of the parties for their failure to agree to a separation and, in the event the separation is allowed, some natural prejudice against one of the parties by reason of a belief, mistaken or otherwise, that such party did not consent to the separation. No prejudice results to either party by reason of a court’s informing the jury that the concerned parties have agreed to a separation of the jury. Kennedy v. State, 291 Ala. 62, 277 So.2d 878 (1973); Segers v. State, 283 Ala. 682, 220 So.2d 848 (1969); Fuller v. State, Ala.Cr.App., 365 So.2d 1010, cert. denied, 365 So.2d 1013 (1979). We do not consider herein any question as to whether defendant himself, in addition to his counsel, consented to the separation, as such question has not been raised and cannot be raised for the first time on appeal. Turner v. State, 54 Ala.App. 467, 309 So.2d 503 (1975).
The only other contention for a reversal is directed at the action of the court as shown by the following that occurred during the cross-examination by the State of defendant’s mother, as a witness for defendant:
“Q. Well, what did the doctor tell you was wrong with him?
“TOM RADNEY — We object to him going in to detail, unless you want her to go into it, I will let her tell everything Dr. Rose said. If that’s what we are going to do.
“COURT — Overruled. Go ahead.
“Q. Mrs. Caldwell, what did the doctor tell you?
“TOM RADNEY — Yes sir, he’s wanting to know all that doctor told her.
“COURT — Well, the doctor is going to be in here eventually, and then he can tell his part. Let’s just go ahead with this cross-examination.
“TOM RADNEY — We move for a mistrial on the Court commenting on whether a witness will or will not be called.
“COURT — Motion for mistrial is denied. Anytime you want to make a motion, make it loud enough for everybody to hear it, don’t just whisper it to the court reporter.
“E. C. HORNSBY — We object Your Hon- or, to any notes being read by this witness to this jury.
“TOM RADNEY — He just asked her what her doctor said, and he said it to her in writing. So, she needs the notes to go by.
“Q. Mrs. Caldwell didn’t testify to that, Mr. Radney did. Let me ask you this, Mrs. Caldwell, if I may take you on voir dire—
“COURT — Well, you have her on cross-examination now.
“TOM RADNEY — I want the jury to see this.
“E. C. HORNSBY — I will at the proper time.
“E. C. HORNSBY — This witness is on cross-examination Your Honor, have Mr. Radney sit down and let him [pronoun evidently refers to co-counsel for the State and not to Mr. Radney the antecedent] continue his cross-examination.
“COURT — Yes, Mr. Radney, go back and sit down.
“Q. Mrs. Caldwell, what did the doctor tell you?
“A. That he was mentally insane.
“Q. That’s all he said?
“A. That’s all.
*504 “WILLIAM HILL — That’s all we have.
“TOM RADNEY — You may come down. Judge I need about five minutes.”
Thereupon, after the jury was excused from the courtroom, defendant’s counsel renewed his motion for a mistrial and argued it, pointing out that he had been put in a dilemma as to whether to call Dr. Rose as a witness, to which the court replied:
“COURT — Well, of course I understand that. You made reference to the fact that the doctor is here, and you referred to the doctor being here, Dr. Rose, and having seen Dr. Rose, and then you brought up the question of Dr. Rose having told her — ”
The matter was concluded as follows:
“TOM RADNEY — After the State had said — after you let the State testify about what the doctor said. Only after he did that. I never mentioned Dr. Rose until then. I make a motion for a mistrial.
“COURT — Motion for mistrial is denied.
“TOM RADNEY — Defendant rests.”
It may be, as appellant indicates, that there was a misunderstanding by the trial court as to which party commenced the inquiry of Mrs. Caldwell as to what she had been told by Dr. Rose. Evidently that is what defendant’s counsel thought when he interrupted the trial judge at the latter part of his statement (“and then you brought up the question of Dr. Rose having told her — ”) to tell the court that he never mentioned Dr. Rose until after the State had brought up “about what the doctor had said.” Our review of the record indicates that counsel for defendant was correct in his statement, but a correct determination of what the court thought at the time could be better made if it had not been interrupted in what it was stating. At any rate, whether defendant was injured depends on what had been said in the presence of the jury, which when carefully analyzed does not show in and of itself whether the court was indicating that defendant would call Dr. Rose as a witness or, on the other hand, that the State would call him. In addition, we note that, by the last part of the testimony of Mrs. Caldwell that the doctor had told her that defendant “was mentally insane,” there is no more reason to say that the failure by either party to call Dr. Rose as a witness hurt defendant any more than it did the State. This is especially true in the light of the verdict finding defendant guilty of the least of the lesser included offenses to which he had pleaded not guilty and not guilty by reason of insanity.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.